# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT L. BENDER and DEBORAH A. BENDER, | * | |
| Plaintiffs, | * | Civil No. CCB-18-979 |
| v. | * | |
| ELMORE & THROOP, P.C. | * | |
| Defendant. | * | |

**Memorandum**

This is a case about consumer debt-collection practices. The plaintiffs own a home in Bel Air, Maryland, that sits within a homeowners' association called "Country Walk Community Association, Inc." (hereafter "Country Walk"). Am. Compl. ¶ 11. Defendant Elmore & Throop, P.C. is a law firm retained by Country Walk to collect debts owed to it by constituent homeowners, including, as relevant here, delinquent assessment payments. Am. Compl. ¶¶ 17-18. In this case, the plaintiffs say that the defendant's efforts to collect supposedly outstanding assessment payments violates the Fair Debt Collection Practices Act (hereafter "FDCPA") in two respects. First, they say, the defendant unlawfully communicated with the plaintiff about the debt at issue after being advised that the plaintiffs disputed the debt and requested that the defendant cease communication. Second, the defendant allegedly attempted to collect attorney's fees and other collection charges that were not authorized by the agreement between the plaintiffs and Country Walk. At issue here is the defendant's motion to dismiss the amended complaint, or in the alternative, for summary judgment. (ECF No. 12.) The defendant contends that dismissal under Rule 12(b)(6) is warranted because the plaintiffs have failed to comply with the applicable

1

one-year statute of limitations. Even if their claims were not time barred, the defendant asserts, it complied with the FDCPA and is thus entitled to summary judgment. Because the plaintiffs did not bring their claims within a year of the alleged violations of the FDCPA, the defendant's motion to dismiss will be granted.

## BACKGROUND

The plaintiffs have owned their home at 546 Country Ridge Circle in Bel Air, Maryland, since 1996. Am. Compl. ¶ 11. The property is located within Country Walk. *Id.* On April 16, 2016, the plaintiffs found a letter dated February 26, 2016, from Elmore & Throop, P.C. taped to their door, claiming that they had failed to pay $77.09 in assessment charges that had accrued from October 1, 2015, through February 29, 2016, and stating that they were now obligated to pay $1048.60 (or $1,096.52) to satisfy their debt and to cover fees, costs, and attorney's fees incurred by their delinquency. Am. Compl. ¶¶ 21-22. A series of communications then ensued between Mr. Bender and Elmore & Throop, P.C. that provide the factual predicate for this lawsuit.

On April 21, 2016, Mr. Bender responded to the posted letter, explaining that the outstanding assessment payments had, in fact, been paid on time, and enclosing cancelled checks showing as much. Am. Compl. ¶ 24. On April 25, 2016, the Benders received a letter from Ms. Elmore acknowledging that the October 2015 and January 2016 quarterly assessment payments had been received but claiming that late fees, interest, costs, and attorney's fees remained outstanding. Am. Compl. ¶ 25. There occurred another round of correspondence in May 2016, in which Mr. Bender sent a letter to Elmore & Throop insisting that, even according to the defendant's own records, the Benders' assessment payments were timely, and the defendant

2

responded with a request for payment of a balance owed. Am. Compl. ¶¶ 27-28. Mr. Bender's next letter, delivered May 18, 2016, included a request that Elmore & Throop cease communication with the Benders about the supposed outstanding debt. Am. Compl. ¶ 29. Ostensibly, Elmore & Throop complied with this request because the next event in the alleged timeline occurred in January 2017, when Mr. Bender, apparently still "[f]rustrated with what was happening," attended the annual HOA meeting. Am. Compl. ¶ 30. Mr. Bender submitted his next quarterly assessment payment at the meeting and yet, for untold reasons, was directed to leave by the president of the property management company (MRA Property Management, Inc.) and was delivered that evening a "banning letter" prohibiting him from returning to the annual meeting's location for a year. Am. Compl. ¶¶ 31-34. There are no additional details in the complaint, nor the subsequent briefing, about what transpired at the annual meeting.

A few additional dates are relevant to the present motion. On February 7, 2017, Ms. Elmore wrote to the Benders acknowledging receipt of the assessment payment made at the annual meeting but stating that they still owed outstanding debt. Am. Compl. ¶ 35. In March 2017, Mr. Bender reiterated that he disputed the debt and asked again that communications about the debt cease. Am. Compl. ¶ 36. The Benders then received, on March 14, 2017, a letter updating their account ledger in response to a verification request they did not make. Am. Compl. ¶¶ 37-38. Nine months went by. In January 2018, Mr. Bender commenced an effort to attend the 2018 annual HOA meeting (from which he was still banned), which entailed calling Ms. Throop to discuss his options. Am. Compl. ¶ 42. It is alleged that on the phone call about Mr. Bender's ability to attend the meeting, Ms. Throop remarked, "well this whole thing would not have happened if you would just pay your bills." Am. Compl. ¶ 44. Mr. Bender insisted they were current, and Ms. Throop went over the Benders' updated account ledger, informing Mr.

3

Bender that there was now a lien against the property. Am. Compl. ¶¶ 45-48. In February 2018, the Benders received another account verification notice listing the outstanding debt. The plaintiffs filed this action on April 5, 2018. (Compl., ECF No. 1.)

The plaintiffs make two arguments for relief under the FDCPA. First, they contend that the January 2018 phone call with Ms. Throop and the February 2018 letter containing an updated account ledger violate 15 U.S.C. § 1692c(c) and its general prohibition on communications with consumer debtors after a written cease and desist request. Am. Compl. ¶ 95. Second, they maintain that the February 2018 letter constitutes a false or misleading representation and an unfair debt collection practice under 15 U.S.C. § 1692e-f, in part because it includes an attempt to collect undue interest, late fees, attorney's fees, and costs not provided for in the agreement between the plaintiff and Country Walk. In its motion to dismiss the amended complaint, or in the alternative, motion for summary judgment, the defendant contends that the plaintiffs' claims are barred by the FDCPA's one-year statute of limitations and that, at all times, it complied with the FDCPA. (Def.'s P. & A. Mot. Dismiss / Mot. Summ. J. at p. 1, ECF No. 12-1.)

## ANALYSIS

### I. Standard of Review

The defendant has moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556

(D. Md. 2003). Because this case is decided on the pleadings, Fed. R. Civ. P. 12(b)(6) provides the operative standard of review and no Rule 12(d) conversion to summary judgment is necessary.

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015). While the inquiry is centered on the sufficiency of the complaint, in "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, [an affirmative] defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

## II. Discussion

Wrongful debt-collection practices claims brought under the FDCPA must be filed within one year of the alleged violation. 15 U.S.C. § 1692k(d). This case was filed on April 5, 2018, which means, to be actionable, the defendant's alleged actions must have occurred on or after

5

April 5, 2017. With this much the plaintiffs agree. (*See* Pls.' Resp. Def.'s Mot. Dismiss / Mot. Summ. J. at p. 25, ECF No. 11). Two events in the timeline delineated above occurred within the actionable window: (1) the January 2018 telephone call between Mr. Bender and Ms. Throop and (2) the final account verification letter sent from Elmore & Throop to the Benders in February 2018. *Id.* at pp. 25-27. Thus, the crux of the present timeliness dispute is whether the alleged actions taken by the defendant within the actionable period constitute independent violations of the FDCPA or whether they are merely subsequent iterations of the same allegedly unlawful debt collection practice initiated at a date preceding the actionable window.

The Fourth Circuit has not decided whether communications or FDCPA violations that occur outside the limitations period bar consumer plaintiffs from proceeding on subsequent but related debt-collection communications. But courts in this district have generally followed the rule, apparently first articulated in *Fontell v. Hassett*, that "the limitations period for FDCPA claims begins from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." 970 F. Supp. 2d 395, 404 (D. Md. 2012); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md. 2014); *Brooks-McCollum v. Aspen Prop. Mgmt. Co.*, 551 F. App'x 677, 680 (4th Cir. 2014); *Costley v. Bank of America, N.A.*, 2017 WL 5564641, at *6-7 (D. Md. Nov. 20, 2017); *McGhee v. JP Morgan Chase Bank, N.A.*, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013). *Fontell* similarly involved an HOA management company's repeated attempts to collect assessment payments and the court reasoned that "[a]lthough each notice was undoubtedly unique in that Plaintiff's initial assessment continued to accrue late fees, the notices all related to collection of the same underlying debt." *Fontell*, 970 F. Supp. 2d at 404.

In this case, both types of alleged FDCPA violation—debt-collection communications after a cease and desist request and misleading representations / unfair debt collection practices—

occurred for the first time in 2016. Specifically, the defendant first claimed costs, fees, interest, and attorney's fees, allegedly in violation of 15 U.S.C. § 1692e-f, when it posted the first collection notice on the plaintiffs' door. That letter was dated February 26, 2016.[1] While the plaintiffs argue that Ms. Throop's statements over the phone and the final verification letter sent in 2018 constitute new independent violations of the FDCPA, the allegedly unlawful collection practices were precisely the type of violation that first occurred back in 2016. While dunning late fees and interest calculations may have changed the overall dollar amount owed, under *Fontell*, attempts to collect "additional amounts result[ing] from the same underlying debt" do not restart the limitations period. *Fontell*, 970 F. Supp. 2d at 404. As it is alleged in the complaint, the account ledger reports provided in 2018, both over the phone and in the letter, were for the same underlying debt as initially claimed by the defendant in 2016. Therefore, the statute of limitations expired on February 27, 2017, over a year before the plaintiffs filed this case.

The second alleged type of FDCPA violation, communication with the plaintiffs regarding the disputed debt after they requested that such communication stop, occurred for the first time on February 7, 2017. Returning to the timeline above, the plaintiffs' first request that the defendant halt its debt-collection communication occurred on May 18, 2016. On Feb 7, 2017, after the annual-HOA meeting transpired, the defendant sent plaintiffs another letter, acknowledging receipt of a subsequent assessment payment but including alongside it documentation of their outstanding balance. Then, on March 14, 2017, the plaintiffs allegedly received another collection letter. At the latest therefore, the first violation of this kind occurred

---

[1] Plaintiffs point out that the limitations period for a debt collection letter "begins to run on the day that the collection letter is sent, not the date it is received by the consumer." (Pls.' Resp. Def.'s Mot. Dismiss / Mot. Summ. J. at p. 25, ECF No. 11) (citing *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004).) Here, whether counted from the date written on the letter or the date the plaintiffs found it posted, the result is the same.

7

in March 2017. Under *Fontell*, and the myriad cases in this district that endorse it, the statute of limitations for this claim ran from March 14, 2017, through March 14, 2018. The plaintiffs case was not filed within this window and therefore this claim is untimely.

The plaintiffs cite several out-of-circuit cases for the proposition that FDCPA violations outside the actionable period do not insulate defendants from liability for later violations. (Pls.' Resp. Def.'s Mot. Dismiss / Mot. Summ. J. at p. 17, ECF No. 11.) None of them, however, concern the mere continued attempt to collect the same debt using the same methods, and are thus readily distinguishable. In *Purnell v. Arrow Financial Services, LLC*, for example, the Sixth Circuit held that the "Plaintiffs' FDCPA claims were not time-barred to the extent that they alleged a discrete violation of the FDCPA within the limitations period. 303 F. App'x 297, 301 (6th Cir. 2008). It further explained, "a Defendant's prior acts 'do not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.'" *Id.* at *302 (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). But at issue in *Purnell* was the defendants' repeated reporting of plaintiffs' debt to Equifax—which, as Judge Grimm noted in *Bey*—did "not involve true continuing violations" and which the Sixth Circuit "viewed as . . . separate violation[s] of the FDCPA." *Bey*, 997 F. Supp. 2d at 317 (citing *Purnell*, 303 F. App'x. at 303-04). "That holding does not apply," Judge Grimm continued, "where the communications are continued efforts to validate the same debt." *Id.* In *Bey*, by contrast, which involved a defendant's repeated communications regarding its intent to foreclose on the plaintiff's property, the court noted, "[w]hat Plaintiff characterizes as subsequent violations are better viewed as communications regarding the first violation, not as discrete and separate violations. Because the alleged violation occurred the first time that Defendants threatened to collect the debt that

Plaintiff believed they lacked the right to collect, the statute of limitations began to run at that time with regard to related communications." *Id.* (citing *McGhee*, 2013 WL 4495797, at *7 n. 10.)[2] The same is true here.

Nor do the policy arguments raised by the parties warrant following a different rule. The plaintiffs argue that applying the *Fontell* rule to their claims would effectively immunize debt collectors from subsequent infractions. (Pls.' Resp. Def's Mot. Dismiss / Mot. Summ. J. at pp. 36-37, ECF No. 11.) If the rule applies, the argument goes, defendants need only locate some earlier collection effort to run out the limitations period and thereby insulate all later wrongdoing from all merits scrutiny. The defendant, by contrast, urges that but for the *Fontell* rule, a claim could "be kept alive indefinitely because each new communication would start a fresh statute of limitations." *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999); Def.'s Reply at p. 7, ECF No. 15. The plaintiffs' policy concerns are not implicated by the present facts. In this case, the bulk of allegedly unlawful activity occurred outside the limitations period, all "types" of violations began in 2016, *Fontell*, 970 F. Supp. 2d at 404, and the only events that took place in the actionable time period were continued efforts to collect the same debt which, notably, occurred only after the plaintiffs themselves admittedly reestablished contact with the defendant. "Congress enacted the FDCPA with the goal of eliminating abusive, deceptive, and unfair debt collection practices." *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490 (4th Cir. 2014). But it imposed a restrictive statute of limitations—evidently to not imperil honest

---

[2] The other out-of-circuit cases the plaintiffs invoke are similarly distinguishable. In *Solomon v. HSBC Mortg. Corp.*, the first allegedly unlawful notice of the plaintiff's default occurred outside the limitations period, but the balance of the violations, including new types of alleged violations, occurred within the limitations period. 395 Fed. App'x 494, *497-98 (10th Cir. 2010). *Demarais v. Gurstel Chargo, P.A.*, involved a renewed attempt to collect debt which had been formally dismissed with prejudice in the course of litigation. 869 F.3d 685, 690, 693-94 (8th Cir. 2017).

collection efforts—that courts are bound to apply. *Bey*, 997 F. Supp. 2d at 317. The result here comports with the text and purpose of the FDCPA. Because the plaintiffs failed to timely bring their claims, the amended complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiffs' amended complaint will be granted.

A separate order follows.

3/25/19
Date

Catherine C. Blake
United States District Judge